USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 22, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

YIMBY, INC.,

        *Plaintiff*,

  -against-

NIKOLAI FEDAK and NEW YORK YIMBY LLC,

        *Defendants*.

------------------------------------------------------------X

17 Civ. 223 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Nikolai Fedak and New York Yimby LLC (together, "Movants") seek civil contempt sanctions against Yimby, Inc. ("Yimby") and its CEO, Daniel George. They argue that Yimby and George should be sanctioned for failure to comply with this Court's orders requiring production of certain original documents and payment of $30,000. Yimby opposes Movants' request; and also seeks a stay pending appeal of the Court's prior orders.

The Court holds Yimby and George in civil contempt. They must pay Movants' reasonable attorney's fees and costs incurred in pursuing this contempt order. Further, the Court denies Yimby's request for a stay pending appeal.

## BACKGROUND

Yimby commenced this action against Movants for monetary damages and injunctive relief in connection with property Movants allegedly wrongfully took. On Friday, February 10, 2017, Yimby moved for a temporary restraining order ("TRO"). Dkt. 22. The Court heard argument that day and granted the TRO. Dkt. 22; Dkt. 44. Yimby never posted the required $250,000 bond,

1

and the TRO never became effective.

On Wednesday, February 15, 2017, Yimby's counsel notified the Court that it could no longer rely on material evidence submitted in support of Yimby's TRO motion. Dkt. 31-2. Yimby's counsel also advised that Yimby "consented to allow [counsel] to seek dismissal of this matter in its entirety." *Id.* The Court held a conference that same day.

At the conference, it became apparent that an employment agreement purporting to bear Fedak's signature ("Employment Agreement") was a forgery. This Employment Agreement, attached to the operative complaint and submitted in support of the TRO motion, was of central importance to the Court's decision to grant the TRO. Plaintiff's counsel even described the Employment Agreement as a "linchpin" to the case itself. *See* Feb. 15, 2017 Tr. 8, Dkt. 42. It was clear that George's declaration in support of the TRO motion was false. The Court vacated the TRO, explained that it would dismiss the action pursuant to Fed. R. Civ. P. 41(a)(2), and requested that Movants' counsel, Steven M. Wagner, bring the forged and false documents to the attention of the United States Attorney's Office for the Southern District of New York. *Id.* 4, 6–7. The Court further stated "I'm going to impose sanctions in the amount of $30,000" (the amount sought by Movants for legal fees incurred), which "George will have to pay." *See id.* 11, 13.

Wagner requested that the Court order Yimby to produce the original Employment Agreement, as well as the originals of any shareholder's agreement purportedly signed by Fedak ("Shareholder's Agreement") or promissory note purportedly signed by Fedak ("Promissory Note") in order to have them examined by a certified document examiner. *See id.* 7–9. According to Wagner, if the originals were produced within approximately 30 days, a document examiner might be able to determine if the signatures were new. *See id.* at 3.

On February 16, 2017, the Court entered an order ("February 16 Order") dismissing the

action pursuant to Fed. R. Civ. P. 41(a)(2); directing "that by February 24, 2017, [Yimby] pay [Movants] $30,000 for [Movants'] attorney's fees, time and expenses" ("Payment Order"); and ordering that by close of business on February 17, 2017, Yimby turn over to Movants the original Employment Agreement and any original version of the Shareholder's Agreement or Promissory Note purportedly signed by Fedak ("Turnover Order"). Dkt. 31.

On February 21, 2017, Wagner reported that Yimby had indicated its intention not to pay the $30,000, or to produce the originals of the Employment Agreement, Shareholder's Agreement, or Promissory Note, as the Court had directed. *See* Dkt. 32. George had sent Wagner a letter on February 17, 2017, attaching a copy of the Employment Agreement, and noting that it was a "facsimile." *Id.* at 4. George stated that as far as he knew, "no original exists." *Id.* Also attached to George's letter was an unsigned Shareholder's Agreement, and a "facsimile" of a Promissory Note signed by George. *Id.*

The Court held a conference on February 22, 2017. Wagner requested that the Court consider contempt proceedings against George for failure to comply with the February 16 Order, and also that the Court amend its February 16 Order "to have dismissal be with prejudice." *See* Feb. 22, 2017 Tr. 4–5, Dkt. 46. The Court asked George about the location of the original, and George stated that he was "not in possession of an original." Tr. 5. He also said that his and "the company's process for document management is to scan the documents and store them digitally;" originals "are generally recycled [(*i.e.*, destroyed)] after they have been scanned." *Id.* The Court scheduled a contempt hearing and permitted Wagner to depose George to inquire as to the originals, "in addition to everything else that you may want." *Id.* 4, 12.

On February 23, 2017, the Court entered an order ("February 23 Order") "that the February 16, 2017 dismissal of this action pursuant to Fed. R. Civ. P. 41(a)(2) is with prejudice" and also

3

"that [Yimby] produce Daniel George for a deposition by [Movants] forthwith." Dkt. 33. On March 1, 2017, Yimby moved the Court to reconsider its order dismissing the action with prejudice, and requested an additional 90 days to pay Movants the $30,000 required by the Payment Order. Dkt 35. Movants opposed Yimby's motion on March 2, 2017, and the Court heard argument on Yimby's motion on March 3, 2017. Dkt. 36.

In addition to discussing Yimby's then-pending reconsideration motion, the Court also heard from the parties on the issue of contempt. Despite the Court's February 16 Order, Yimby had only made one $5,000 payment to Movants, on March 2, 2017. Mar. 3, 2017 Tr. 2, 30, Dkt. 49. Further, neither Yimby nor George had produced any originals of the Employment Agreement, Shareholder's Agreement, or Promissory Note. *Id.* 2. At George's deposition on March 2, 2017, George invoked his Fifth Amendment privilege in response to questions relating to the Employment Agreement. *Id.* Yimby's counsel explained the basis for George's assertion of his Fifth Amendment privilege: "Mr. George has been referred to the US Attorney's office and is already in criminal contempt of this court and therefore under the Fifth Amendment he really should not be testifying with respect to anything related to the employment agreement or what he does with original documents." *Id.* 30–31.

Since Yimby had not complied with the Court's February 16 Order, Movants stated that they intended to seek contempt sanctions including, among other things, cancellation of Yimby's trademark registration, which Movants contend was improperly obtained. *See id.* at 4, 36–38. The Court responded, "it's clear to me that Mr. George has not complied with the Court's order and sanctions are appropriate. You want to tell me what you want, I'll consider it." *Id.* 39.

On March 6, 2017, the Court denied Yimby's motion for reconsideration and its request for an extension of time ("March 6 Order"). Dkt. 39.

On March 8, 2017, Movants submitted the transcript of George's March 2 deposition and detailed the sanctions they sought against both Yimby and George in light of the failure to produce the original documents and pay only $5,000 of the $30,000 in attorney's fees. Mar. 8 Letter, Dkt. 48; George Dep. Tr., Dkt. 48-1. Specifically, Movants requested: (1) reimbursement for additional legal fees incurred since the February 16 Order; (2) an order that Yimby and George provide access to the computer that the Employment Agreement and Promissory Note were originally scanned to before being recycled; (3) an order that George produce certain documents, including financial records, that Movants requested pursuant to the Notice of Deposition issued to George; (4) an order that Yimby and George provide Movants access to certain electronic services and data, and related requests; (5) an order cancelling Yimby's "YIMBY" trademark, and related requests; and (6) an order cancelling certain copyright registrations, and related requests. *See* Mar. 8 Letter at 8–9. Yimby also requested "that the Court consider more severe coercive measures in the event that Yimby, Inc. and George continue to exhibit willful disregard of the Court's orders." *Id.* at 10.

On March 17, 2017, Yimby opposed Movants' request for sanctions; and moved for a stay pending appeal of the Court's February 16 and March 6 Orders. Opp'n, Dkt. 51, at 9. In George's affidavit submitted in support of the opposition, he claimed that Yimby could not comply with the Payment Order "because it did not have sufficient funds," and purported to describe Yimby's financial status. Mar. 17, 2017 Aff. of Daniel George ("George Mar. 17 Aff."), Dkt. 51-1, ¶¶ 8, 12. Yimby also noticed its appeal of the Court's February 16, February 23, and March 6 Orders. Dkt. 52; Dkt. 53.

On March 22, 2017, Movants responded to George's March 17 affidavit. Mar. 22 Letter, Dkt. 54. Movants argued that the description of Yimby's financial status was incomplete. *Id.* On

5

March 28, 2017, Yimby filed a letter primarily disputing Movants' claims that Yimby improperly registered the "YIMBY" trademark. Dkt. 58. On May 2, 2017, Movants filed a letter to update the Court "on the status of the continuing contempt by plaintiff, Yimby, Inc., and its principal, Daniel George." Dkt. 59. Movants also requested a conference to discuss a cost bond in connection with Yimby's appeal. *Id.* at 4. On May 10, 2017, Yimby submitted a letter asserting that the issues Movants raised in their May 2 letter were "inaccurate and/or not meritful." Dkt. 60. Yimby also disputed the need for a cost bond. *Id.*

## DISCUSSION

### I. Motion for Civil Contempt Sanctions

#### A. The Court Holds Yimby in Civil Contempt

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation marks omitted).

Movants seek contempt sanctions against Yimby in connection with the Court's orders that (1) by February 24, 2017, Yimby pay Movants $30,000, and (2) by February 17, 2017, Yimby turn over to Movants the original Employment Agreement and any originals of the Shareholder's Agreement and Promissory Note purportedly signed by Fedak. As an initial matter, the Court will not hold Yimby in contempt for not turning over any originals of the Shareholder's Agreement and Promissory Note purportedly signed by Fedak. Movants have not proved by clear and

6

convincing evidence that Yimby has failed to comply: there is no evidence that any such originals ever existed.

The Court has no hesitation, however, in holding Yimby in civil contempt for failing to comply with the Court's orders regarding the payment of $30,000 and turnover of the original Employment Agreement. The orders are clear and unambiguous. And there is no question that Yimby has neither paid the full $30,000, nor turned over the original Employment Agreement.

Yimby argues, nonetheless, that it should not be held in contempt because it could not comply with the orders. It asserts that it did not have the funds to pay the $30,000, and that the original Employment Agreement "does not exist." *See* Opp'n at 2. It is true that "[a] party may defend against a contempt by showing that . . . compliance is 'factually impossible,'" but that party bears the burden of production in raising the defense. *Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986) (quoting *United States v. Rylander*, 460 U.S. 752, 757 (1983)). Yimby has failed to meet its burden of production here.

Nothing supports Yimby's claim that the original Employment Agreement "does not exist." Opp'n at 2. George invoked his Fifth Amendment privilege against self-incrimination with respect to questions about the Employment Agreement during his deposition; his counsel indicated George would do the same during the March 3 contempt hearing; and George is silent regarding the Employment Agreement in his March 17, 2017 affidavit. *See, e.g.*, George Dep. Tr. 22; Mar. 3, 2017 Tr. 30; George Mar. 17 Aff. George's assertions about the supposed non-existence of the Employment Agreement come only in the form of unsworn statements. *See* Feb. 22, 2017 Tr. 5; Dkt. 32 at 4. Clearly, this is insufficient. George may be entitled to assert his privilege under the Fifth Amendment, but Yimby cannot hide behind George's privilege assertion in defending against contempt. The burden of production remains on Yimby, regardless of George's desire to avoid

self-incrimination. *See Rylander*, 460 U.S. at 753–54, 757–58 (explaining that invocation of Fifth Amendment privilege does not shift production burden from party arguing it could not produce books and records, and reversing court of appeals' decision that party should not be held in civil contempt).

Yimby has also failed to establish "clearly, plainly, and unmistakably" its inability to comply with the Payment Order. *See Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995); *S.E.C. v. Universal Express, Inc.*, 546 F. Supp. 2d 132, 135 (S.D.N.Y. 2008) ("[P]roof that [an alleged contemnor] cannot pay the entire amount would not absolve him from paying as much as is possible to pay under the circumstances . . . .") (Lynch, J.). Yimby asserts that it cannot pay and submits in support (1) George's affidavit, (2) a copy of its business checking account statement as of January 31, 2017, and (3) a letter from Tina Salandra, a CPA whose "firm has been engaged to prepare 'S' corporation the tax returns [*sic*] for Yimby, Inc. for years 2015 and 2016." George Mar. 17 Aff.; Dkt. 51-2; Dkt. 51-7. George claims that "[a]s of January 31, 2017, Yimby had a cumulative balance of $159.55 between all of its bank accounts and currently has a negative balance of $3,224.73 in addition to significant expense accruals." George Mar. 17 Aff. ¶ 12. The January 31, 2017 account statement shows an ending balance on January 31, 2017 of $154.55. Dkt. 51-2. And Salandra states that Yimby had "significant operating losses" in 2014, 2015, and 2016, and "had less than $1,000 in cash available." Dkt. 51-7.

These assertions do not clearly establish that Yimby has a "complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions." *See Huber*, 51 F.3d at 10. Rather, they paint an incomplete picture of Yimby's financial status. For example, Yimby offers no evidence regarding the value of any assets it might own. *See S.E.C. v. Zubkis*, 97 Civ. 8086 (JGK), 2003 WL 22118978, at *4 (S.D.N.Y. Sept. 11, 2003) ("So long as

8

Zubkis has any assets that can be used to pay down the disgorgement order against him, Zubkis is in continuing contempt of this Court's order.").

Yimby also does not claim to be unable to obtain funds from outside sources. Nothing is said about obtaining a loan or selling its stock, as it has done in the past. *See* Mar. 2, 2017 George Dep. Tr. 32, 36–38, 41, 53–55, 57 (explaining lending and investing relationship between George's advertising agency, Drive Digital, and Yimby); *id.* 131 (stating that two individuals own five percent of the company, and "[t]he capital contribution was $50,000 per percentage point"); Affidavit of Adora Erike ¶¶ 5, 6, Dkt. 51-5 (shareholder stating that she received 2% of outstanding Yimby stock "in consideration of a capital contribution of $100,000"); Mar. 3, 2017 Tr. 30 (explaining that George lent Yimby $5,000 for Yimby to pay a portion of the Payment Order). Contrast this claimed inability with George's statement that as of March 17, 2017, "Yimby [had] incurred over $111,868 in legal fees related to this matter." George Mar. 17 Aff. ¶ 19. Yimby is apparently content to rack up over $111,868 in legal fees—and continue doing so[1]—while not complying with the Court's order that it pay Movants for their legal fees. *See Huber*, 51 F.3d at 11 ("[T]he district court on remand found that Huber's assertions that he was unable to pay were incredible and that, in light of his demonstrated ability to, *inter alia*, finance his post-February 1994 litigation, Huber had the ability to pay the fines and had not carried his burden of proving his inability to pay.").

Yimby is in civil contempt.

**B.    The Court Holds George in Civil Contempt**

Yimby argues that George should not be held in contempt because "the Court did not order

---

[1] Yimby presumably continues to incur legal fees in connection with its appeal of the Court's prior orders. And Yimby hopes to re-open the underlying litigation, which indicates an ability and appetite to incur even further legal fees.

George to do anything that he did not do." Opp'n at 5 (emphasis omitted). This is mistaken. The Court clearly stated at the February 15 conference that "George will have to pay" the $30,000. Feb. 15, 2017 Tr. 13. Further, "[a] nonparty respondent may be held in contempt of a court order if the respondent abets the party named in the order in its noncompliance or if it is legally identified with that party." *Spectacular Venture, L.P. v. World Star Int'l, Inc.*, 927 F. Supp. 683, 684 (S.D.N.Y. 1996); *see also Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*, 667 F. App'x 15, 17 (2d Cir. 2016) (summary order).

As a practical matter, Yimby and George "are one and the same." *See Spectacular Venture*, 927 F. Supp. at 685 (explaining that nonparty individual was "one and the same" with defendant company where individual was defendant company's president and principal). Movants state that George is Yimby's "CEO and principal" and that "he has sole control over the ownership and operation of Yimby." Mar. 8 Letter at 1; *see also* George Mar. 17 Aff. ¶ 1 (George is Yimby's CEO). They further state that George's other company, Drive Digital, pays Yimby's employees, Mar. 8 Letter at 1; *see also* George Dep. Tr. 32, 54–55, and that Drive Digital issued Fedak's W-2 and 1099 forms, Mar. 8 Letter at 1. Yimby does not deny any of this. Moreover, George testified during his deposition that Yimby has no president, nor any other officers. George Dep. Tr. 5–6.

The record also reflects that George is the person behind Yimby's complaint and motion for a TRO. Further, George is the only person affiliated with Yimby to have acted on its behalf in connection with complying with the February 16 Order. George sent Movants' counsel a letter purporting to respond to the Court's February 16 Order: he attached copies of the Employment Agreement and Promissory Note, and stated, "Yimby is not in a position to make a cash payment to Fedak at this time." *See* Dkt. 32 at 4; *see also* George Dep. Tr. 128 (George confirming he was "in charge of the financial matters of Yimby" in connection with preparation of 2014 Yimby tax

return). It is clear, therefore, that George is responsible for deciding not to pay Movants or turn over the original Employment Agreement.

Accordingly, George is held in civil contempt for failure to pay the full $30,000 and to turn over the original Employment Agreement. *See Spectacular Ventures*, 927 F. Supp. at 685; *Elec. Workers Pension Trust Fund of Local Union #58, IBEW v. Gary's Electric Serv. Co.*, 340 F.3d 373, 383 (6th Cir. 2003) ("[I]f a corporate officer avoids a court's order to the corporation by failing to take action or attempt compliance, 'they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.'" (quoting *Wilson v. United States*, 221 U.S. 361, 376 (1911)).

### C. Award of Sanctions

Sanctions for civil contempt may be imposed "to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics*, 369 F.3d at 657. Movants request a broad and creative array of sanctions. *See* Mar. 8 Letter at 8–9. With the exception of Movants' request for additional attorney's fees, however, the requests are designed neither to coerce compliance, nor compensate Movants for Yimby and George's noncompliance with the Court's orders. The Court therefore declines to award those requests.

The Court will, however, award a portion of Movants' attorney's fees; specifically, those incurred in connection with pursuing contempt sanctions. A district court "may award appropriate attorney fees and costs to a victim of contempt." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996). It is an open question in this Circuit whether "a finding of willfulness or bad faith is required before a court may order attorneys' fees as a sanction for violating a court order." *Jacobs v. Citibank, N.A.*, 318 F. App'x 3, 5 n.3 (2d Cir. 2008) (summary order). Here, there is substantial support for concluding that Yimby and George's contempt is willful. Yimby and George had

notice of the Court's February 16 Order. *See* Feb. 22, 2017 Tr. 5; Dkt. 32 at 4. They continue to incur legal fees in connection with the underlying litigation, and Movants underscore that Yimby's revenues are being used to "repay[] loans allegedly made by Mr. George's company, Drive Digital." *See* Mar. 22 Letter at 3. And no attempt was made to modify the February 16 Order or to make any payments until after Movants requested contempt proceedings and the time for compliance had passed. *See Bear U.S.A., Inc. v. Kim*, 71 F. Supp. 2d 237, 249 (S.D.N.Y. 1999) ("A willful contempt is one where the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." (internal quotation marks omitted)).

In any event, the Court recognizes that "the costs of enforcing compliance constitute the only measurable harm suffered by [Movants]," and "to leave [Movants] to bear [their] costs in such a situation would give [Movants] no incentive to bring the contempt to the Court's attention." *Shady Records, Inc. v. Source Enters., Inc.*, 351 F. Supp. 2d 64, 73 (S.D.N.Y. 2004) (Lynch, J.). George and Yimby have offered no credible explanation for failing to turn over the original Employment Agreement. Further, they sought to avoid paying Movants the $30,000. Rather than proposing a payment plan or suggesting a future date for payment, George offered instead to "forgive the debt Fedak owes the company." Dkt. 32 at 4. It was not until after Movants raised Yimby and George's actual and prospective noncompliance to the Court that Yimby paid Movants $5,000 and requested additional time to comply. There is no reason to believe that had Movants not pursued contempt sanctions, Yimby and George would have belatedly and partially complied with the Court's orders. An award of attorney's fees in connection with this contempt motion is therefore appropriate.

Movants also "respectfully request that the Court consider more severe coercive measures

in the event that Yimby, Inc. and George continue to exhibit willful disregard of the Court's orders." Mar. 8 Letter at 10. The Court will do so with respect to the payment of the remaining $25,000 for Movants' attorney's fees.[2] Yimby requested 90 additional days to make the full $30,000 payment on March 1, 2017—a request the Court denied—and it has now been over 90 days since Yimby's request. Movants may therefore move for further relief, up to and including a request for George's civil incarceration, if this Order does not bring Yimby and George into immediate compliance. *See Adams v. N.Y. State Educ. Dep't*, 959 F. Supp. 2d 517, 520 (S.D.N.Y. 2013) ("[I]mprisonment is an appropriate sanction for contempt of a court order directing an individual to make a particular payment." (quoting *Spectacular Venture*, 927 F. Supp. at 685)).

## II. Stay Pending Appeal

Yimby requests a stay of the Court's February 16 and March 8 Orders pending appeal. Opp'n at 9. Yimby "bears the burden of showing that the circumstances justify" the Court's exercise of its discretion to grant a stay pending appeal. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). There are four factors for the Court to consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 426. The first two factors are the most critical. *Id.* at 434.

To satisfy the first factor, "[i]t is not enough that the chance of success on the merits be better than negligible." *Id.* (internal quotation marks omitted). And "simply showing some

---

[2] The Court will not impose coercive sanctions as a result of Yimby and George's failure to turn over the original Employment Agreement. The purpose of the Turnover Order was to allow a certified document examiner to try to determine whether the signature on the Employment Agreement was new, but the window for such a determination has closed. Nothing will be gained by coercing compliance. The harm is already done.

possibility of irreparable injury fails to satisfy the second factor." *Id.* at 434–35 (internal quotation marks and citation omitted). Yimby argues that it is likely to succeed in challenging the Court's decision to dismiss the case with prejudice, as well as to deny an extension of time to pay the balance of the $30,000. Opp'n at 9–12. Whether Yimby is likely to succeed on its argument that dismissal should not have been with prejudice is irrelevant. There is nothing to stay in connection with the dismissal. Either the Second Circuit will affirm the Court's decision, and the case will remain dismissed with prejudice, or the Second Circuit will vacate and remand, and the case will be re-opened.

Yimby hopes against hope in asserting that it is likely to prevail in appealing the Court's denial of Yimby's request for an additional 90 days to comply with the Payment Order. Its only support for this bare assertion is the March 17, 2017 letter from Salandra regarding Yimby's financial status. Opp'n at 12. But this letter was not before the Court when it issued its March 6 Order denying Yimby's request. Yimby cited only George's statement in a letter to Wagner that "Yimby is not in a position to make a cash payment to Fedak at this time." *See* March 6 Order at 6. Yimby may have succeeded in including Salandra's letter in the appeal record by virtue of filing the appeal after its opposition papers, but the Second Circuit's review of the Court's March 6 Order is properly limited to the record before the Court at the time the Court rendered its decision. *See Dictograph Prods. Co. v. Sonotone Corp.*, 231 F.2d 867, 867 (2d Cir. 1956) ("On this appeal we may not consider any depositions or other evidence that were not filed in the district court when [the judge] decided the motion."); *see also Agence France Presse v. Morel*, 10 Civ. 2730 (AJN), 2015 WL 4154072, at *3 (S.D.N.Y. July 9, 2015). On the record before the Court at the time it issued the March 6 Order, there is little likelihood that Yimby will prevail in appealing the Court's decision not to grant Yimby additional time to pay Movants the $30,000.

14

Next, Yimby's claim that it will be irreparably injured absent a stay falls flat. Yimby states that it needs any income it receives "to repair the damage to the business caused by Fedak." Opp'n at 12. And this from a company which filed a forged document, and whose CEO filed a false affidavit. Further, Yimby never explains why it cannot obtain funds from sources, other than its income stream, as it has on a number of occasions. It therefore fails to satisfy its burden with respect to the first and second prongs, and so no stay of the Payment Order pending appeal is warranted. *Cf. Nken*, 556 U.S. at 435 ("Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest.").

## **CONCLUSION**

The Court holds Yimby and George in civil contempt of its February 16 Order requiring the payment of $30,000 and the turnover of the original Employment Agreement. They must pay the reasonable costs and attorney's fees Movants have incurred in pursuing this contempt order. Movants are directed to submit documentation detailing their attorney's fees and costs associated with pursuing this contempt order. Further, the Court denies Yimby's request for a stay of the Court's February 16 and March 6 Orders pending appeal. A conference to discuss a cost bond in connection with Yimby's appeal, and any other open matters, will be held on July 6, 2017 at 11:15 am.

Dated: New York, New York
June 22, 2017

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge